**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-CR-287 (JDB)** |
| **ODIN MEACHAM** | |
| **Defendant.** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Odin Meacham to 96 months' incarceration, the mid-point of Sentencing Guidelines applicable in this case, three years of supervised release, and $2000 in restitution.

## I.    INTRODUCTION

The defendant, Odin Meacham, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

Meacham, 30, served as an agent of chaos as he repeatedly attacked the police officers at the West Plaza. Meacham initially attempted to take away a bike rack barricade that police officers had been using for protection. After being pepper sprayed, Meacham picked up a wooden flagpole and struck a police officer on his upper body so hard that the flagpole broke in half. Meacham was then pepper sprayed again. Undeterred, Meacham picked up the broken half of the flagpole and then rushed the police line again, striking the bike rack barricade precisely where an officer's hand had been just seconds earlier. After two flagpole strikes, Meacham picked up a black metal pole from the ground and threw it at MPD Sergeant Kimball, directly striking him. Meacham then taunted MPD Sergeant Kimball. Even after two flagpole and a metal pole strike, Meacham kept going. Meacham approached MPD Officer Leasure, yelled "lean in" to galvanize the mob, and then grabbed Officer Leasure's baton and attempted to wrestle it away. Meacham then remained on the Capitol Grounds and harassed the police officers guarding the Capitol Building, screaming "you fucking pieces of shit," "you fucking scumbag pieces of shit," "you are protecting criminals," and "are you scared motherfucker."

The government recommends that the Court sentence Meacham to 96 months of incarceration for his conviction of violating 18 U.S.C. 111(a) and (b)." A 96-month sentence reflects the gravity of Meacham's conduct, but also acknowledges the collateral consequences Meacham has already experienced as a result of the Capitol riot.

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 1, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.    Meacham's Role in the January 6, 2021 Attack on the Capitol

Odin Meacham, a farmer and one-time MMA fighter[2], participated in the January 6 attack on the Capitol. His crimes are documented through a series of videos provided to the FBI by concerned citizens, body worn cameras from the Metropolitan Police Department, open-source video, and surveillance footage.

Defendant Odin Meacham is a resident of Myton, Utah and on or about January 5, 2021, he drove over 30 hours and 2,000 miles from Utah to Washington, D.C. *See* Government Exhibit 1, at 9:38-9:46. In a voluntary interview with the FBI on May 15, 2023, Meacham stated that the purpose of his trip to Washington, D.C., was to "help" former President Trump. *Id.* at 14:40-15:40. Meacham believed that going to the United States Capitol building "would make some sort of difference" because he knew that on January 6, 2021, Congress would be certifying the 2020 presidential election. *Id.* at 15:45-17:05. While recalling his actions, Meacham stated, "there were some people that were willing to go overboard. I was not willing to go overboard." *Id.* at 7:45. Meacham's documented assaults and the jury's verdict condemn this blatant falsehood.

---

[2] *See* https://www.tapology.com/fightcenter/fighters/34079-odin-meacham.

On the morning of January 6, 2021, Meacham and his nephew[3] went to see the former President speak at the "Stop the Steal" rally. *Id.* at 7:10-8:50. After the rally, Meacham walked to the U.S. Capitol Building with his nephew and other rioters. *Id.* When he arrived on the Capitol grounds, Meacham saw metal bike racks positioned to keep people away from the Capitol building. *Id.* at 18:35-21:30. Meacham then walked around the bike racks to the West Plaza of the U.S. Capitol Building. *Id.* There, his progress was halted by another line of bike racks held in place by a line of federal officers. *Id.* At approximately 2:00 p.m., significant sections of the police line, largely maintained with metal bike racks, were breaking as the rioters in the crowd swarmed and overwhelmed the officers. *Id.*

Meacham witnessed a fight over the bike racks between the officers and the other rioters. *Id.* Growing angry, he approached the officers. *Id.* At 2:09 p.m., Meacham emerged from the crowd, holding a large wooden pole, and attempted to pull a bike rack away from the officers, as depicted in the image below.

---

[3] Nejourde Meacham, 21, was charged with four misdemeanors as a result of his actions on January 6, 2021. *See* 23-mj-166-ZMF at ECF 1. Nejourde Meacham passed away August 28, 2023. *See* PSR ¶ 95.



*Image 1: Trial Exhibit 704.1*

Several seconds later, Meacham rushed towards several officers and struck one United States Capitol Police (USCP) Officer on the upper body with a large wooden pole, as depicted by the images below. *See* Government Trial Exhibit 707 at 0:10.



*Image 2: Trial Exhibit 605*



*Image 3: Trial Exhibit 707.1*



*Image 4: Trial Exhibit 707.3*

Just seconds after striking an officer with a large wooden pole, Meacham rushed at the police line again and used the remaining part of that same pole to strike a metal bike rack barricade being held by law enforcement officers. *See* Government Trial Exhibit 602 at 0:20.

At approximately 2:14 p.m., Meacham picked up what appears to be a black metal pole from the ground.



*Image 5*

Approximately thirty seconds later, Meacham threw the black pole at a D.C. Metropolitan Police Department (MPD) officer, hitting that officer on his left hand. The images below show Meacham throwing the black metal pole at the MPD officer, as well as the pole striking the officer in the hand.



*Image 6: Trial Exhibit 603.1*



*Image 7: Still Shot from Trial Exhibit 603 at 0:01*



*Image 8: Still Shot from Trial Exhibit 703-A at 0:12*



*Image 9: Still Shot from Trial Exhibit 703-A at 0:12 showing Meacham's metal pole striking the*

*MPD Sergeant's hand*

10

Seconds after throwing the metal pole at the officer, Meacham pointed and shouted at the same officer in a taunting manner.



*Image 10: Still shot from Trial Exhibit 603X at 0:16*

At approximately 2:16 p.m., Meacham again emerged from the crowd and approached MPD officer Leasure. *See* Government Trial Exhibit 702-A at 0:10. Meacham shouted, "lean in!" multiple times while simultaneously signaling towards the crowd with his right hand in an apparent effort to galvanize the crowd to approach and overwhelm the officers. *See id.* At 0:20. Meacham then grabbed and attempted to take possession of Officer Leasure's baton, as depicted in the images below.



*Image 11*: Government Trial Exhibit 702-A at 0:23



*Image 12 Government Trial Exhibit 702-A at 0:26*

After grabbing the MPD officer's baton, Meacham remained on Capitol grounds and continued to verbally harass law enforcement officers. Among other things, Meacham shouted: "you fucking pieces of shit," "you fucking scumbag pieces of shit," "you are protecting criminals," and "are you scared motherfucker." *See* Government Trial Exhibit 706-A.



*Image 13: Still Shot from Trial Exhibit 706-A at 0:44*

### III.    THE CHARGES AND PLEA AGREEMENT

On August 23, 2023, a federal grand jury returned an indictment charging Odin Meacham with eight counts, including, Count One Civil disorder, in violation of 18 U.S.C. § 231(a)(3); Count Two Assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); Count Three Assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); Count Four Assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a); Count Five: Entering or

remaining in a restricted building or grounds with a dangerous weapon, in violation of 18 U.S.C.§§

1752(a)(1) and (b)(1)(A); Count Six: Disorderly or disruptive conduct in a restricted building or

grounds with a dangerous weapon, in violation of 18 U.S.C.§§ 1752(a)(2) and (b)(1)(A); Count

Seven: Engaging in physical violence in a restricted building or grounds (or aiding abetting others

to do so) with a dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); Count

Eight: An act of physical violence in the Capitol grounds or building, in violation of 40 U.S.C. §

5104(e)(2)(F); On, June 18, 2024, Odin Meacham was convicted on all counts following a bench

trial.

## IV.    STATUTORY PENALTIES

Odin Meacham now faces sentencing on all counts.

Paragraphs 133 through 137 of the Presentence Report note the maximum penalties faced

by Odin Meacham.

## V.    THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings

by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49

(2007). The Government agrees with the Guidelines range as noted in the Presentence Report. *See*

PSR ¶ ¶ 27-73.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline,

U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who

have no criminal history points and who meet certain additional criteria. As Meacham engaged in

aggravated violent conduct and possessed a dangerous weapon as defined under U.S.S.G. § 1B1.1

cmt. 1 on January 6th, Section 4C1.1 does not apply in this case. *See* PSR ¶ 72.

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 76. Accordingly, based on the government's and PSR calculation of the defendant's total adjusted offense level at 29, Meacham's Guidelines imprisonment range is 87 to 108 months' imprisonment.

**VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

**A.    Nature and Circumstances of the Offense**

As shown in Section II(B) of this memorandum, Odin Meacham's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Meacham's persistence in the face of multiple doses of pepper spray was matched only by his ferocity in attacking police officers repeatedly and with dangerous weapons. The nature and circumstances of Meacham's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 96 months' incarceration.

**B.  The History and Characteristics of the Defendant**

Meacham is currently employed as a farmer and miner. PSR ¶ 116. Meacham has no significant criminal history prior to his violent assaults on law enforcement on January 6th.

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Odin Meacham's criminal conduct on January 6 was the epitome of disrespect for the law.

**D.    The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[4] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Odin Meacham had every opportunity to avoid the events of January 6th. After driving over two thousand miles to attend the "Stop the Steal" rally on the Ellipse, Meacham could have been content with making his voice heard and returned to the hotel accompanied by his nineteen-year-old nephew. Meacham could have entered the Capitol Grounds but stopped before the restricted perimeter, and then returned home. Meacham could have given up after getting pepper sprayed

---

[4] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

while trying to steal a bike rack barricade. But he didn't. At every key moment on January 6th, Meacham escalated. He hit an officer so hard with a flagpole that it snapped. He swung the broken flagpole at another officer. He threw a metal pole at a third police officer. He tried to take away the baton of a fourth officer. He screamed pure vitriol at a fifth officer. And, months later, with the benefit of time and space – Meacham still didn't consider his actions "overboard."

### E.   The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.   Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and

consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[5] "When an offense is uniquely serious,

---

[5] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[6] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In U*nited States v. Josiah Kenyon*, 21-cr-726 (CJN), Kenyon was convicted of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). On January 6, Kenyon joined other rioters who breached the U.S. Capitol and spent approximately 30 minutes walking through the building. He used his fist and a flagpole to damage a large exterior window and he participated in assaulting police officers with a large and violent group of rioters at the Capitol's lower west terrace tunnel. There, Kenyon used several large objects to violently assault officers attempting to the guard the tunnel area. At one point, Kenyon used a table leg to strike an officer in the leg and then to strike a second officer on the head. Like Meacham, Kenyon engaged in assaults against police in the most violent areas on the Capitol grounds that day. Further, like Meacham, Kenyon was convicted of two counts of assault with a deadly or dangerous weapon. However, unlike Kenyon, Meacham was convicted of a third

---

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

assault. In addition, Kenyon eventually accepted responsibility for his actions, which Meacham has not. Judge Nichols sentenced Kenyon to 72 months of incarceration. As noted here, Meacham was convicted of three assaults, compared to Kenyon's two assault convictions. Moreover, unlike Kenyon, Meacham has never accepted responsibility for his multiple violent acts on January 6. These significant factors warrant a longer period of incarceration for Meacham and support the government's sentencing recommendation.

In *United States v. Julian Khater,* 21-cr-222 (TFH), Khater was convicted of two counts of assaulting, resisting, or impeding officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). Like Meacham, Khater engaged in multiple violent assaults on January 6, and used a deadly or dangerous weapon in the commission of those assaults. Khater also—like Meacham—actively, repeatedly, and violently participated in the mob's efforts to breach the police line on the west front of the Capitol building. A significant difference between Meacham and Khater is that Khater eventually accepted responsibility for his violent actions on January 6. While Khater received a three-level enhancement for bodily injury to an officer that Meacham did not, Khater also received a three-level reduction for acceptance of responsibility that Meacham has not earned. Meacham has never accepted responsibility for his conduct that day. Khater was ultimately sentenced to 80 months of incarceration. Meacham's refusal to accept responsibility for his conduct on January 6, as well as his conviction on three assault charges, as compared to Khater's two convictions, warrants a longer term of incarceration, and supports the government's sentencing recommendation.

An additional comparator is *U.S. v. Taake,* 21-cr-498 (CJN). In that case, Taake was convicted of one count of assaulting, resisting, or impeding officers using a dangerous weapon, in

violation of 18 U.S.C. §§ 111(a)(1) and (b). Like Meacham, Taake violently assaulted law enforcement on January 6, and used a deadly or dangerous weapon. Also, like Meacham, Taake taunted officers and encouraged other rioters to continue their violent assault on the U.S. Capitol. Through their assaults on officers and their encouragement of other rioters, both men contributed to the breach of the U.S. Capitol on January 6. While Taake received a three-point offense level increase for inflicting bodily injury, he also received a two-point reduction for acceptance of responsibility. The Court ultimately concluded that Taake's total adjusted offense level was 27, and sentenced him to 74 months of incarceration. An important difference here is that Taake was convicted on a sole 111(b) count, while Meacham was convicted on two 111(b) counts and one 111(a) count. Thus, Meacham's conviction on multiple assault counts results in a higher total offense level and warrants a longer term of incarceration.

Finally, in *U.S. v. Joseph Padilla*, 21-cr-214 (JDB), this Court was confronted with a defendant who engaged in conduct strikingly similar to Meacham's. Like Meacham, Padilla assaulted police officers defending the U.S. Capitol—including one with a dangerous weapon— attempted to break through police lines, rallied other rioters to join him, and relentlessly berated the police. Padilla was ultimately convicted of two assaults, including one with a deadly weapon. By contrast, Meacham was convicted of three assaults, two with a deadly weapon. Like Meacham, Padilla did not accept responsibility for his conduct on January 6. This Court sentenced Padilla to 78 months of incarceration.

## VII.   RESTITUTION

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to

order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096; *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The MVRA applies to certain offenses including those "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), a "crime of violence," § 3663A(c)(1)(A)(i), or "an offense against property … including any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii). *See Fair*, 699 F.3d at 512 (citation omitted). But Meacham was convicted of a violation of an offense under Title 18, the VWPA does apply.

The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both [t]he VWPA and MVRA require identification of a victim, defined in both statutes as "a person directly and proximately harmed as a result of" the offense of conviction. *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA). Both statutes identify similar covered costs, including lost property and certain expenses of recovering from bodily injury. *See*

*Papagno*, 639 F.3d at 1097-97; 18 U.S.C. §§ 3663(b), 3663A(b). Finally, under both the statutes, the government bears the burden by a preponderance of the evidence to establish the amount of loss suffered by the victim. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019).

In deciding whether to impose restitution under the VWPA, the sentencing court must take account of the victim's losses, the defendant's financial resources, and "such other factors as the court deems appropriate." *United States v. Williams*, 353 F. Supp. 3d 14, 23-24 (D.D.C. 2019) (quoting 18 U.S.C. § 3663(a)(1)(B)(i)). The MVRA, by contrast, requires imposition of full restitution without respect to a defendant's ability to pay.[7]

Because the defendant in this case engaged in criminal conduct in tandem with hundreds of other defendants charged in other January 6 cases, and his criminal conduct was a "proximate cause" of the victims' losses if not a "cause in fact," the Court has discretion to apportion restitution and hold the defendant responsible for his individual contribution to the victims' total losses. *See Paroline v. United States*, 572 U.S. 434, 458 (2014) (holding that in aggregate causation cases, the sentencing court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses"). *See also United States v. Monzel*, 930 F.3d 470, 476-77, 485 (D.C. Cir. 2019) (affirming $7,500 in restitution toward more than a $3 million total loss, against a defendant who possessed a single pornographic image of the child victim; the restitution amount was reasonable even though the "government was unable to offer anything more than 'speculation' as to [the defendant's] individual causal contribution to [the

---

[7] Both statutes permit the sentencing court to decline to impose restitution where doing so will "complicat[e]" or "prolong[]" the sentencing process. *See* 18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

victim's] harm"; the sentencing court was not required to "show[] every step of its homework," or generate a "formulaic computation," but simply make a "reasoned judgment."); *cf.* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court … may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

More specifically, the Court should require Meacham to pay $2,000 in restitution for his convictions on Counts One through Eight. This amount fairly reflects Meacham's role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, two thousand dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VIII.   FINE

The defendant's convictions for violations of the statutes of conviction subject him to the statutory maximum fines described in the Presentence Report Paragraph 163 and 164. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine.

## IX.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 96 months' incarceration, three years of supervised release, and $2000 in restitution.

Respectfully submitted,

MATTHEW M. GRAVES

UNITED STATES ATTORNEY


BY:    */s/ Shalin Nohria*
SHALIN NOHRIA
Assistant United States Attorney
D.C. Bar No. 1644392
United States Attorney's Office
District of Columbia


*/s/ Benjamin J. Smith*
BENJAMIN J. SMITH
Assistant United States Attorney
N.Y. Bar Number 5220637
United States Attorney's Office
District of Columbia